UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON L. BELTON,<br><br>    Plaintiff,<br><br>v.<br><br>J. GUTIERREZ, et al.,<br><br>    Defendants. | Case No. 19-cv-01909-WHO (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**<br><br>**ORDER REFERRING THE MATTER TO JUDGE ILLMAN FOR SETTLEMENT;**<br><br>**ORDER STAYING ACTION;**<br><br>**INSTRUCTIONS TO CLERK**<br><br>Dkt. No. 75 |

## INTRODUCTION

Plaintiff Vernon L. Belton alleges in this 42 U.S.C. § 1983 suit that prison guards at Salinas Valley State Prison violated his constitutional rights by failing to protect him from, or intervene in, an attack from Moore, another inmate; by finding him guilty of a rule violation; and by providing constitutionally inadequate medical care.[1] Defendants move

---

[1] This is the second motion for summary judgment in this suit. The prior MSJ addressed Belton's claims that Dr. Zewert, a surgeon, failed to provide him with constitutionally adequate medical care. (Dkt. No. 73.) I granted Zewert's motion for summary judgment. (Dkt. No. 76.)

for summary judgment and have presented supporting evidence.  Belton has not filed an opposition.[2]

The motion for summary judgment will be GRANTED in part and DENIED in part. Defendants have presented undisputed evidence that the prison guards were unable to prevent the attack:  they had no notice that Moore posed a threat to Belton, and because they were deceived by Moore's assertion that he had a medical problem, they were surprised by the attack.

However, defendants' papers show a genuine dispute of material fact that defendants failed to intervene to stop or curtail the fight after it started.  Accordingly, summary judgment will be denied to prison guards Pola, Gonzalez, and Gutierrez for failing to intervene.  Summary judgment will be granted in favor of psychiatric technicians Mayder and Camacho, who had no duty or training to intervene in fights between prisoners.

Defendants have presented undisputed evidence that Belton received all the process he was due when his rule violation guilty finding was reversed on appeal and he was exonerated of the charge.  Summary judgment will be entered in favor of Martinez, the hearing officer whose guilty finding was overturned through the grievance process.

Defendants also have presented undisputed evidence that Dr. Lam provided constitutionally adequate medical care for Belton.  Summary judgment will be entered in favor of Lam.

The Eighth Amendment failure to intervene claims remain and will be referred for settlement.

---

[2] After the first summary judgment motion was granted, Belton asked to "withdraw his [remaining] federal civil rights claims on grounds that COVID restrictions prevent him from preparing a defense or response to defendants' second motion for summary judgment." (Dkt. No. 79 at 1.)  The request was denied and Belton was given additional time to file an opposition to the second MSJ.  (*Id.* at 2.)  No opposition has been filed.

2

# BACKGROUND

Belton alleges that defendants (i) failed to protect him from an attack from another inmate in violation of the Eighth Amendment; (ii) issued an unjustified Rules Violation Report (RVR) in violation of due process; and (iii) failed to provide him with constitutionally adequate medical care for the injuries he received as a result of the attack.

The following factual allegations are undisputed unless specifically noted otherwise.

### i.     Fight with Prisoner Moore

On June 2, 2018, J. Moore, a prisoner in Building A-4 of Salinas Valley State Prison, informed defendant Gutierrez that he was having trouble breathing. (Compl., Dkt. No. 1 at 6; MSJ, Dkt. No. 75 at 12.) Two psychiatric technicians, defendants Mayder and Camacho, came to medically evaluate Moore. (Compl., Dkt. No. 1 at 6; MSJ, Dkt. No. 75 at 12.) Defendants Pola and Gonzalez, both correctional officers, came to A-4 soon after Mayder and Camacho in order to perform their duties in the building. (Compl., Dkt. No. 1 at 6; MSJ, Dkt. No. 75 at 12.) Gonzalez stayed to help Gutierrez in arranging for medical care for Moore. (MSJ, Dkt. No. 75 at 12.)

Belton was standing 35-40 feet from Moore's cell at the time, at a water fountain in the dayroom in the C side of A-4 under the control booth. (MSJ, Belton Depo., Dkt. No. 75-8 at 10-11, 14.) Belton alleges that Moore earlier had been yelling threats from his cell, but they were not directed at him. (*Id.* at 15.)

As he approached Moore's cell, Gutierrez, at Camacho's request, instructed the control booth officer to open Moore's cell so that the technicians could examine him. (MSJ, Gutierrez Decl., Dkt. No. 75-2 at 3.) When the cell door opened, Moore "rushed" by an officer and toward Belton and swung a weapon at him. (MSJ, Belton Depo., Dkt. No. 75-8 at 26.) The fight lasted from one to three minutes, and ended when Belton knocked Moore to the ground. (*Id.* at 26, 32.) He then got on the ground in response to Gutierrez's and Gonzalez's orders. (*Id.* at 32, 34.)

1    Belton alleges that "Gutierrez, Gonzalez, Pola, Camacho, and Mayder seemed to
2    simply watch these events unfold, failing to take any action to prevent plaintiff from being
3    attacked." (Compl., Dkt. No. 1 at 6.) According to defendants, during the fight Pola was
4    in A side handing out RVRs to other prisoners, and the fight ended when Gonzalez and
5    Gutierrez ordered Belton to get on the ground. (MSJ, Dkt. No. 75 at 13.) Mayder and
6    Camacho stayed near a table by Moore's cell during the attack. (*Id.*) Belton admits that
7    Mayder and Camacho were not trained to intervene in prisoner altercations. (MSJ, Belton
8    Depo., Dkt. No. 75-8 at 42-43.)

    Belton testified at his deposition that he did not know Moore prior to the attack.
"We had no interactions . . . we never had any differences with each other, and we were
not friends," (MSJ, Belton Depo., Dkt. No. 75-8 at 15), "[s]o I didn't have any concerns
with him assaulting me," (*id.* at 24). Nothing in Belton's record indicated that he should
not be housed with Moore, and Belton was unaware of any potential threat from him prior
to the fight. (MSJ, Dkt. No. 75 at 13.)

### ii. Rules Violation Report and Hearing

Belton was given an RVR charging him with battery causing serious injury. (MSJ, Dkt. No. 75 at 13.) In preparation for the hearing on the RVR, he was assigned a staff assistant and an investigative employee (IE). (*Id.*) The IE interviewed Belton and Gutierrez. (*Id.* at 14.) Belton asked that the IE also interview prisoners Sabala, Sutton, and Hammond, but the IE deemed as irrelevant the questions Belton had for them. (*Id.*)

At the hearing, Belton was found guilty of the lesser-included violation of fighting because Martinez, the hearing officer, concluded that Belton was fighting to protect himself. (*Id.*) Martinez assessed Belton a 90-day credit forfeiture and informed him that he could seek restoration of these credits if he was not found guilty of any administrative or serious RVRs for the next six months. (*Id.*)

Belton's appeal of the guilty finding was granted. (*Id.*) The RVR was re-issued, a new hearing was held in which Belton was exonerated, and his good-time credits were restored. (*Id.*) Martinez was not involved in the rehearing. (*Id.*)

4

### iii. Medical Treatment

Belton sustained a laceration on his left index finger and swelling on his right fifth finger as a result of the fight. (*Id.*) After the fight, he was taken to the Triage and Treatment Area (TTA) for emergency medical care, where three steristrips were applied to his left hand and a splint was applied to his right fifth finger. (*Id.*) An x-ray and a follow-up appointment were scheduled, and Belton was prescribed Motrin for pain relief. (*Id.*)

Defendant Dr. Lam saw Belton on June 6 after he received an x-ray and a laceration repair. (*Id.*) Lam diagnosed a comminuted fracture of the fifth metacarpal bone of the right hand and directed Belton to continue using the splint and take ibuprofen and Tylenol-3 when necessary. (*Id.* at 14-15.) Belton alleges that he asked for and was denied antibiotics and stronger pain medication. (MSJ, Belton Depo., Dkt. No. 75-8 at 50-51.) When he asked for an explanation for the denial of pain medication, Lam said, "Oh, we usually wait for that until after you come back from surgery." (*Id.* at 51.)

Lam also referred Belton to Dr. Zewert, a surgeon, for an evaluation. (MSJ, Dkt. No. 75 at 15.) Belton questioned Zewert's competence because he had heard from other prisoners that Zewert's work was "subpar." (MSJ, Belton Depo., Dkt. No. 75-8 at 47-48.) Belton alleges that when he and Lam discussed potential surgical scarring, Lam said, "[b]lack people don't heal so well." (*Id.* at 48-49.) Belton believes the statement was racist but admits he does not know why Lam made the alleged statement. (*Id.* at 52-53.)

On the evening of June 6, Belton was seen by Dr. R. Javate in the TTA, who dressed his left-hand wound, examined both hands, and ordered a follow-up. (MSJ, Dkt. No. 75 at 15.) Belton met Dr. S. Pajong for a follow-up on June 11. (*Id.*) Pajong ordered that Belton continue using the splint and prescribed acetaminophen-codeine for pain. (*Id.*) Belton saw Pajong again on June 18 after his consultation with Zewert. (*Id.*)

On June 21, Zewert surgically repaired Belton's hands. (*Id.*) On June 25 and July 3, 2018, Belton met Drs. Z. Ahmed and Pajong. (*Id.*) On July 19, Zewert surgically removed the hardware he had implanted during the first surgery. (*Id.*) On August 1, Belton met Lam for a follow-up. (*Id.*) Lam directed Belton to continue using ibuprofen

1  and to attend his physical therapy appointments to increase the right hand's range of
2  motion. (*Id.* at 15-16.) On August 6, there was another follow up with Lam. (*Id.* at 16.)
3        Belton continued to have hand pain and stiffness and asked for the x-ray results.
4  (*Id.*) Lam ordered Belton to continue taking ibuprofen for pain and keep up with his
5  physical therapy exercises. (*Id.*) On September 14, there was another follow-up with Lam
6  during which Belton asked for stronger pain medication. (*Id.*) Lam prescribed ibuprofen
7  and Tylenol, and directed Belton to continue with physical therapy. (*Id.*)
8        On November 29, Zewert performed a third surgical procedure to treat Belton's
9  continued limited right-hand range of motion. (*Id.*) On December 18, 2018, there was a
10 follow-up with Lam during which Belton complained of complained of moderate right-
11 hand pain. (*Id.*) Lam assigned Belton a five-day morphine prescription and directed him
12 to continue his exercises. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

Belton alleges that (i) defendants Pola, Gutierrez, Gonzalez, Mayder, and Camacho failed to prevent, or intervene to stop, the attack from Moore, thereby violating the Eighth Amendment; (ii) defendant Martinez violated his due process rights in connection with the RVR hearing; and (iii) defendant Lam failed to provide constitutionally adequate medical care.

### i.  Failure to Prevent or Intervene

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met:  (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

The subjective inquiry of the second prong of this test involves two parts. First, a plaintiff "must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to the plaintiff. *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1078 (9th Cir. 2013). Second, a plaintiff "must show that there was no reasonable justification for exposing the inmates to the risk." *Id.*

Belton has not shown a genuine dispute of material fact that defendants failed to prevent Moore's attack. Belton himself testified at his deposition that he did not suspect any threat from Moore before the incident and there was nothing in Belton's file indicating that he should not be housed with more. Though Moore was yelling threats that day, Belton admits they were not directed at him. Also, defendants would not have been on notice that Moore would attack Belton, as they were responding to Moore's medical complaints.

The undisputed facts show that Moore rushed passed guards the moment his cell was opened to attack Belton. The suddenness of his charge and his ruse of playing sick show that the guards had no reason to believe Moore would attack Belton. Belton has not shown a genuine dispute of material fact that "the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to him. *Lemire*, 726 F.3d at 1078. Also, because the cell was opened to allow Moore to be taken for medical examination, Belton has not shown a genuine dispute of material fact that "there was no reasonable justification for exposing the inmates to the risk." *Id.*

However, defendants' papers show a genuine dispute of material fact whether some defendants failed to intervene to stop the attack. According to Belton's version of events Pola, Gutierrez, and Gonzalez were within 40 feet of Belton and Moore during the attack, which lasted one to three minutes, but did not intervene to stop the attack.

Belton has not shown a genuine dispute of material fact that psychiatric technicians Mayder and Camacho were deliberately indifferent. Belton admits that Mayder and Camacho were not trained to intervene in prisoner altercations. Also, because they were

8

1    psychiatric technicians, they owed no duty to Belton to protect him from an attack from
2    another inmate.
3         Defendants' summary judgment motion is GRANTED in favor of Mayder and
4    Camacho and is DENIED regarding the failure to intervene claims against Pola, Gonzalez,
5    and Gutierrez.

6    **ii.    Due Process Claims Against Martinez**

7         Belton's due process claims against defendant Martinez fail as a matter of law
8    because he received the process he was due when the results of his hearing were reversed
9    during the grievance appeal procedure. The Ninth Circuit has held that a prisoner is not
10   denied due process where a due process error is "corrected in the administrative appeal
11   process," which is "part of the due process afforded prisoners." *Frank v. Schultz*, 808 F.3d
12   762, 764 (9th Cir. 2015) (quoting *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir.
13   1995)); *see also Aguilar v. Ohland*, No. C 14-0949 MEJ (PR), 2015 WL 1967263, at *3
14   (N.D. Cal. May 1, 2015) ("There is no due process violation when good-time credits are
15   restored as there is no significant hardship on the inmate."). Whatever due process
16   violations occurred at Belton's first hearing were cured by the later reversal, which itself
17   was part of the due process Belton received.

18        Belton did not file an opposition to the motion for summary judgment. This does
19   not end the matter because a district court may not grant a motion for summary judgment
20   solely because the opposing party has failed to file an opposition. *See Cristobal v. Siegel*,
21   26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after
22   court determines that there are no material issues of fact). This is so even if the failure to
23   oppose violates a local rule. *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir.
24   2003). The court may, however, grant an unopposed motion for summary judgment if the
25   movant's papers are themselves sufficient to support the motion and do not on their face
26   reveal a genuine issue of material fact. *See United States v. Real Property at Incline*
27   *Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of
28   judgment for moving party without consideration of whether motion and supporting papers

satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

The evidence presented by defendants supports their motion for summary judgment. In contrast, Belton has presented no evidence (and therefore has not shown a genuine dispute of material fact) that his due process rights were violated. In sum, the movants' papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact.

Defendants' motion for summary judgment is GRANTED in favor of defendant Martinez.

### iii. Medical Claims Against Lam

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

The Supreme Court has further clarified this standard by holding that "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A mere accident or evaluative mistake is not to be characterized as wanton infliction of unnecessary pain. *Estelle*, 429 U.S. at 105.

A plaintiff must show that his doctors or nurses embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Belton alleges that Lam denied him antibiotics, stronger pain medication, and referred him to a specialist (Zewert) whom Belton believed was not a competent physician. Belton has not shown a genuine dispute of material fact that Lam violated his Eighth Amendment rights. Belton's disagreement with Lam's decision not to prescribe antibiotics and stronger pain medication does not establish an Eighth Amendment violation. *See Toguchi*, 391 F.3d at 1059-60 (a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference). No infection resulted and apparently Belton has not presented any evidence that he was at risk for one. Also, while Belton did not receive the pain medication he wishes, Lam did prescribe medication for his pain. Belton has not presented any evidence that the failure to prescribe other medication was "medically unacceptable" treatment given in "conscious disregard of an excessive risk to [his] health." *Toguchi*, 391 F.3d at 1058-60.

Belton's mere uneasiness with the Zewert referral does not show that Lam embarked on a course of treatment that was medically unacceptable. Furthermore, the Court determined in its ruling on the first summary judgment motion that Zewert gave constitutionally adequate medical care. (Dkt. No. 76 at 8-9.)

In sum, this undisputed evidence indicates that Lam provided Belton with timely and appropriate medical care. He was examined promptly and repeatedly, and was given medication, and referrals for surgery and therapeutic exercises. This shows attention and care, not deliberate indifference. Though Belton contends that Lam did not provide him the medication he wished, that does not indicate the "obduracy and wantonness" that

11

United States District Court
Northern District of California

characterize the conduct prohibited by the Eighth Amendment. *Albers*, 475 U.S. at 319. Lam did provide Belton with medication aimed at treating his pain.

Belton did not file an opposition to the motion for summary judgment. As noted, this does not end the matter because a district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). This is so even if the failure to oppose violates a local rule. *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

The evidence presented by defendants supports their motion for summary judgment. In contrast, Belton has presented no evidence (and therefore has not shown a genuine dispute of material fact) that defendants violated his Eighth Amendment rights. In sum, the movants' papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact.

Defendants' motion for summary judgment in favor of Lam is GRANTED.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in PART. (Dkt. No. 73.) Summary judgment is GRANTED in favor of Mayder, Camacho, Martinez and Lam. Summary judgment is DENIED as to Pola, Gutierrez, and Gonzalez.

Pursuant to Local Rule 72-1, this matter is referred to the Honorable Robert Illman for purposes of settlement. The parties will be advised of the date, time and place of the

12

next appearance by notice from Judge Illman.

Plaintiff must attend all conferences scheduled by Judge Illman.  <u>Failure to attend even one conference, or a failure to comply with Judge Illman's instructions and orders in every respect, may result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.</u>

The Clerk shall forward a copy of this order to all parties and to Judge Illman, and terminate all pending motions.  This action is STAYED until further order of this Court.  The Clerk shall ADMINISTRATIVELY CLOSE the file.

**IT IS SO ORDERED.**

**Dated:**  February 16, 2022



WILLIAM H. ORRICK
United States District Judge

13